Filed 11/1/17 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D071334 |
| Plaintiff and Respondent, | (Super. Ct. No. SCE194453) |
| v. | ORDER MODIFYING OPINION |
| CHRISTOPHER DREW, | |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed October 12, 2017, be modified as follows:

1. The two paragraphs that start on or near page 8 and continue to or near the end of page 9 are replaced with the following paragraph:

> While *Johnson*, *supra*, 61 Cal.4th 674 did *definitively* clarify that Drew was not barred, the law was at a minimum unsettled prior to the expiration of the period for a timely petition for resentencing. At least one Court of Appeal decision had earlier held an inmate *could* be eligible for resentencing on a qualifying offense notwithstanding his convictions for other nonqualifying offenses. (See, *Johnson, supra*, at p. 680.) Thus, there was reasonable support for an argument, which Drew could have interposed prior to the expiration of the period for a timely petition for resentencing, that his other nonqualifying conviction did *not* preclude resentencing. Indeed,

because the Supreme Court in *Johnson* ultimately endorsed the conclusion reached in the earlier Court of Appeal case (*id*. at p. 695) that Drew's qualified offense *was* eligible for resentencing despite convictions for other nonqualifying offenses, Drew had an objectively meritorious argument for resentencing which he could have timely raised. That Drew may have been *subjectively* unaware of his eligibility argument does not necessarily provide *objective* good cause for delay. (Cf. *In re Douglas* (2011) 200 Cal.App.4th 236, 244 [a "petition for writ of habeas corpus that is substantially delayed without good cause is considered untimely" and a "[m]istaken belief is . . . insufficient to explain the lengthy delay in filing a petition for writ of habeas corpus"].) Because there was a clear two-year limitations period that was set to expire at a time when the state of the law was at worst uncertain, providing Drew with a reasonable and well-supported argument in favor of his eligibility for resentencing, there was simply no legal downside to filing the recall petition prior to the deadline. Under these circumstances, the court could well conclude there was no good cause for the delay.

2. At the end of the paragraph on page 9, after the sentence after "there was no good cause for delay," insert footnote 4 as follows:

Moreover, Drew's implied claim that his delay was attributable to an unawareness fueled by legal uncertainty is undermined by the fact that even after *Johnson* was filed on July 2, 2015, he waited over *another* year to file his recall petition. Thus, a trial court could well conclude the actual reason for delay was entirely unrelated to any flux in the law.

**There is no change in the judgment.**

HUFFMAN, Acting P. J.

Copies to: All parties

2

Filed 10/12/17 (unmodified version)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D071334 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE194453) |
| CHRISTOPHER DREW, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, David J. Danielsen, Judge. Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

Christopher Drew petitioned under Penal Code[1] section 1170.126 to recall a sentence pursuant to the Three Strikes Reform Act of 2012 (hereafter TSRA). The trial court denied the petition because it was untimely and the court found Drew failed to show good cause to excuse the delay. This appeal challenges that ruling.

FACTUAL AND PROCEDURAL BACKGROUND

In the 1999 proceeding that is the subject of this appeal (*People v. Drew* (Super. Ct. San Diego County, 1999, No. SCE194453) (SCE194453)), Christopher Drew was convicted of grand theft (§ 487, subd. (a)), and two counts of receiving stolen property (§ 496, subd. (a)). The court also found true the allegations that Drew had two strike priors (§§ 667, subds. (b)–(i) & 1170.12) and four prison priors (§ 667.5, subd. (b)). Based on existing law, Drew was sentenced to an indeterminate term of 29 years to life.

Two years later, in a second and separate proceeding (*People v. Drew* (Super. Ct. San Diego County, 2001, No. SCE199615) (SCE199615)), Drew was convicted of robbery (§ 211), three counts of assault with a firearm (§ 245, subd. (b)), and two counts of possession of a firearm by a felon (§ 12021, subd. (a)(1)). With attendant findings and admissions, he was sentenced to a total of 70 years to life in prison, and that sentence was ordered to run consecutive to the sentence imposed in the 1999 proceeding.

In September 2016 Drew filed a petition to recall his 1999 sentence in case number SCE194453 pursuant to the TSRA. Because the TSRA required that petitions be filed by November 7, 2014, absent "a showing of good cause," (§ 1170.126, subd. (b)),

---

1       All further statutory references are to the Penal Code unless otherwise specified.

2

the court issued an order to show cause (OSC) why his petition should not be denied as untimely. Drew's response to the OSC asserted that he "never contacted anyone seeking relief because he did not know he was eligible" and his case was never "caught by any of the myriad agencies who were working to identify and file the cases that were eligible for relief." According to Drew, his inaction was attributable to his lack of awareness of his possible eligibility because of "his life sentences on other nonqualifying offenses and cases." The People opposed Drew's recall petition arguing it was untimely and there was no good cause to excuse the late filing. Specifically, the People noted Drew's conviction in the 1999 proceeding had been final since April 11, 2001, but he did not file his petition until September 2016, almost two years after the petition period had expired under the TSRA. The court ultimately found Drew had not shown adequate good cause for not timely pursuing a petition under the TSRA and denied his petition.

## DISCUSSION

In 2012, the California electorate approved Proposition 36 and enacted the TSRA, which included the addition of section 1170.126 to the Penal Code. (*People v. Johnson* (2015) 61 Cal.4th 674, 682–683 (*Johnson*).) The TSRA's effective date was November 7, 2012. (*Ibid.*) Before enactment of the TSRA, California's Three Strikes Law provided that a recidivist offender with two or more prior qualifying strikes was subject to an indeterminate life sentence if convicted of *any* new felony offense. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167–168.) Under the reforms adopted by the TSRA, however, life sentences were limited to cases where the new crime was a serious or

3

violent felony or the prosecution pled and proved an enumerated disqualifying factor; in all other cases, the recidivist would be sentenced as a second strike offender. (*Ibid.*)

In addition to changing how defendants would be sentenced prospectively, the TSRA also created a retroactive relief procedure for inmates presently serving an indeterminate term of imprisonment under the former Three Strikes Law whose sentence under the TSRA would *not* have been an indeterminate life sentence. Eligible inmates would be permitted to seek resentencing under the TSRA. (*Johnson*, *supra*, 61 Cal.4th at p. 682.) Under that procedure, an inmate serving a Three Strikes sentence for an offense not defined as serious or violent (and who is not otherwise disqualified) may commence a request for resentencing by filing a petition for a recall of sentence within two years of the date of the act "or at a later date upon a showing of good cause." (§ 1170.126, subd. (b); *Johnson*, at p. 682.)

The parties agree that because Drew's current offense in case number SCE194453 is not defined as serious or violent, he was not otherwise disqualified from seeking resentencing, and he could have petitioned for recall of his sentence "within two years after the effective date of the act." (§ 1170.126, subd. (b).) The parties also agree the specified two-year time frame for that recall petition expired on November 7, 2014, so measured by the general rule Drew's recall petition was not timely. But the two-year limitations period under section 1170.126 contains an exception: it permits an inmate to file his recall "at a later date upon a showing of good cause." (*Ibid.* at subd. (b).) This appeal presents the question whether Drew has established "good cause" so as to take advantage of the exception.

4

1. *Standard of Review*

As a general matter appellate courts have recognized a trial court "has broad discretion to determine whether good cause exists." (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037 [discretion to determine whether good cause exists to grant continuance of trial].) In circumstances where such discretion exists, our review of the trial court's "good cause" determination employs the familiar "abuse of discretion" standard. (*Ibid.*; accord, *Stroud v Superior Court* (2000) 23 Cal.4th 952, 973.) We recognize, of course, that the court's discretion must be " 'exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 275.) Moreover, "[t]he scope of discretion always resides in the particular law being applied." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.)

2. *"Good Cause" in the Context of the TSRA*

We begin with a basic but important proposition. By including a limitations period subject to a "good cause" exception, the TSRA impliedly determined that not every delay in filing a recall petition would be excusable. Our task is thus to distinguish excusable delays from inexcusable ones. In doing so we sail uncharted waters. The parties agree that neither section 1170.126 nor any published authority has defined "good cause" within the meaning of that section.

The briefs of both parties refer us to case law interpreting section 1382—which contains various time limitations that ensure a defendant receives a speedy trial— suggesting that it may provide at least rough guidance for construing "good cause" under

5

section 1170.126, subdivision (b). Like section 1170.126, "[s]ection 1382 does not define 'good cause' as that term is used in the provision, but numerous California appellate decisions that have reviewed good-cause determinations under this statute demonstrate that, in general, a number of factors are relevant to a determination of good cause: (1) the nature and strength of the justification for the delay, (2) the duration of the delay, and (3) the prejudice to either the defendant or the prosecution that is likely to result from the delay." (*People v. Sutton* (2010) 48 Cal.4th 533, 546.) The courts have concluded in other contexts that, when making a "good-cause" determination, a trial court must consider all of the relevant circumstances of the particular case, "applying principles of common sense to the totality of circumstances." (See, e.g., *Stroud v Superior Court* (2000) 23 Cal.4th 952, 969.)

We recognize that the analogy between section 1382 (which is focused on the state's obligation to timely bringing a person to trial) and section 1170.126 (which focuses on an inmate's obligation to commence the recall petition process) is an imperfect one because they involve entirely different phases of the criminal process. But the analogy may provide some guidance because both statutes are concerned with time limits within which certain actions must be taken and under what circumstances a delay beyond those deadlines should be permitted. Under both, delays beyond the deadlines carry consequences, and "good cause" functions as a barometer to evaluate the excuse for the delay and decide whether to obviate those consequences.

At the same time, one of the judicially-crafted considerations employed under section 1382—prejudice to the opposing party—appears far less likely to be a significant

6

factor under section 1170.126.  Under the former provision, prejudice from delay can be a highly pertinent consideration because evidence can become stale, memories can fade, and witnesses can become unavailable.  (See *People v. Hill* (1984) 37 Cal.3d 491, 498.)  Under section 1170.126, however, it is difficult to see how the prosecution would ever be significantly prejudiced by a delay in the filing of a recall petition, because the factors guiding whether to grant the resentencing rest on largely immutable facts contained in records maintained by the courts and the prison authorities.  (See § 1170.126, subd. (g).)  Thus, while the first two factors identified in *People v. Sutton, supra,* 48 Cal.4th at page 546, are relevant analytical tools in determining "good cause" under section 1170.126, in most cases the third factor will not be germane.

3.  *Application to the Facts of This Case*

There is no dispute that the delay here was substantial.  Drew waited nearly two years after expiration of the statutory deadline for relief under the TSRA before filing his petition.  Weighed against that significant delay was the proffered reason for the delay: Drew claimed only that he was not aware he might be eligible for resentencing in case number SCE194453 because of his "life sentences on other nonqualifying offenses and cases"[2] and it was not until *Johnson*[3] was decided in July 2015 that it was clear his

_____

[2]     Although the record is not entirely clear, we construe Drew's reference to his "life sentences on other nonqualifying offenses and cases" to refer to his nonqualifying life sentence imposed in case number SCE199615.

7

sentence in case number SCE194453 was eligible for resentencing notwithstanding his other nonqualifying offenses.

While *Johnson*, *supra*, 61 Cal.4th 674 did *definitively* clarify that Drew was not barred, at least one earlier case (published in May 2014) held that "although section 1170.126 does not address eligibility for resentencing where a petitioner's commitment offenses include both a felony categorized as serious or violent and a felony that is not so categorized, a conclusion that nonserious/nonviolent offenses are eligible for resentencing (absent other disqualifying factors) is consistent with the language of the statute and would advance the voters' intent in enacting Proposition 36." (*In re Machado* (2014) 226 Cal.App.4th 1044, 1048, review granted July 30, 2014, S219819.) The *Machado* decision, which created a split of authority on this question (see *Braziel v. Superior Court* (2014) 225 Cal.App.4th 933, review granted July 30, 2014, S218503), was filed many months *before* the expiration of the two-year deadline and provided solid support for an argument that his other nonqualifying conviction did *not* preclude resentencing.

Indeed, *Machado*, *supra*, 226 Cal.App.4th 1044 is significant not merely for its extensive analysis that supported Drew's eligibility, but also because the Supreme Court granted review of *Machado* on July 30, 2014, and ultimately endorsed *Machado's* result.

---

3    Noting that section 1170.126 "is ambiguous as to whether a current offense that is serious or violent disqualifies an inmate from resentencing with respect to another count that is neither serious nor violent," the Supreme Court in *Johnson* concluded that in light of the history and purpose of the TSRA, "resentencing is allowed with respect to a count that is neither serious nor violent, despite the presence of another count that is serious or violent." (*Johnson, supra*, 61 Cal.4th at pp. 694–695.)

That Drew may have been *subjectively* unaware of his eligibility does not necessarily provide *objective* good cause for delay.  (Cf. *In re Douglas* (2011) 200 Cal.App.4th 236, 244 [a "petition for writ of habeas corpus that is substantially delayed without good cause is considered untimely" and a "[m]istaken belief is . . . insufficient to explain the lengthy delay in filing a petition for writ of habeas corpus"].)  Instead, the state of the law throughout mid-2014 and until the deadline was at worst uncertain, providing Drew with a more than nonfrivolous argument in favor of his eligibility for resentencing.  Under these circumstances, the court could well conclude there was no good cause for the delay.  Indeed, in light of the conflict in the decisional law and the pending expiration of a clear two-year limitations period, there was simply no legal downside to filing the recall petition prior to the deadline.[4]

In contrast to his arguments in the trial court, on appeal Drew now concedes that his delay was not really attributable to pre-*Johnson* uncertainty.  Instead, he appears to assert there was "good cause" within the meaning of section 1170.126 because he delayed during a time he lacked legal representation (for which he should be excused), but then promptly pursued his recall petition after the Public Defender's office serendipitously unearthed his case nearly a year after *Johnson* and alerted him to the potential for resentencing.  In effect, he contends there should be no time limits for filing a recall

---

[4]     Moreover, Drew's implied claim that his delay was attributable to an unawareness fueled by legal uncertainty is undermined by the fact that even after *Johnson* was filed on July 2, 2015, he waited over *another* year to file his recall petition.  Thus, a trial court could well conclude the actual reason for delay was entirely unrelated to any flux in the law.

petition as long as no one told him he had the ability to request resentencing. Were this contention accepted, it would be tantamount to erasing the limitations period from the statute in all but the most unusual of circumstances.

Here, there was no evidence Drew did *anything* to investigate potential relief for three and one-half years (between the Nov. 7, 2012, effective date of the TSRA, through late May, 2016), even though he was then serving a life sentence that at least arguably was impacted by the TSRA. He did not contact the court. He did not request assistance from the Public Defender's office that previously represented him. He did not inquire of anyone at the California Department of Corrections and Rehabilitation. Certainly, we do not suggest a good cause showing requires that an untutored layman such as Drew undertake yeoman efforts in an effort to navigate the intricacies of the TSRA. But neither do we accept Drew's claim on appeal that faced with years during which there is no hint of activity or even de minimus effort by the inmate to protect his rights, a trial court abuses its discretion when it determines there is no good cause to dispense with the legislatively prescribed deadline for filing recall petitions.

In this case, the delay was lengthy and the reason for Drew's inactivity is unexplained except by the absence of a lawyer proactively advising him regarding his rights and remedies. We cannot conclude it was an abuse of discretion for the trial court to find that Drew did not show "good cause" for his late-filed recall petition.

DISPOSITION

The order is affirmed.

10

DATO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

11